Merrill W. REICHENBACH, Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.

No. 85–1071.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1985.

Decided Sept. 18, 1985.

injunction in the district court, Canfield is free to press for any lesser form of relief to which it

Dennis W. Carroll (Ana C. Zigel, Administrative Law Center, Baltimore, Md., on brief), for appellant.

Donald H. Romano (J. Frederick Motz, U.S. Atty., Randolph W. Gaines, Deputy Asst. Gen. Counsel, A. George Lowe, Kathleen C. Buckner, Baltimore, Md., on brief), for appellee.

Before CHAPMAN and SNEEDEN, Circuit Judges and HAYNSWORTH, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

Merrill W. Reichenbach appeals from the order of the district court affirming the Secretary's denial of his third application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(c) and 423. The district court held there to be substantial evidence to support the decision of the Administrative Law Judge (ALJ) that Reichenbach's impairments are not severe enough to be classified as disabling under the Act even though Reichenbach has a history of Reiter's disease and slight intellectual deterioration. We disagree and conclude that in determining the degree of severity of Reichenbach's impairments, the Secretary failed to consider the combined effect of his various impairments on his ability to work. Accordingly, we vacate the decision of the district court and remand the case with instructions to return it to the Secretary

feels itself entitled.

for further proceedings in accordance with this opinion.

## I

Reichenbach is 51 years old, has a fifth grade education and has had past relevant work experience as a maintenance engineer, a houseman for a hotel, and a security guard.

On May 20, 1982, Reichenbach filed his third application for disability insurance benefits, alleging disability as of November 25, 1978, due to Reiter's disease and decreased intellectual functioning. Since prior applications also alleged disability as of November 25, 1978, due to the same impairments, with the second application being denied by the Administrative Law Judge (ALJ) on July 14, 1981, the Secretary, in this third application, found the prior decisions binding under the doctrine of *res judicata* and barred considering all evidence of record prior to July 14, 1981.

Reichenbach alleges disability due to Reiter's syndrome, a triad of urethritis, conjunctritis, and arthritis, one of which may recur at monthly or yearly intervals. At the administrative hearing on the third application, Reichenbach testified that he experiences constant pain in his arms and spine; that he can never find a comfortable position standing, sitting or lying down; that he has to soak in a tub three times a day to relieve pain; and that he has to use a prescription cane which he has trouble holding.

Medical evidence reveals that on three occasions in 1982, Reichenbach received outpatient treatment at Johns Hopkins Hospital for what was diagnosed as glandular swelling and tenderness in the neck area as well as chronic thrombophlebitis for which he was advised to rest, elevate his leg two to three times daily, and take aspirin for pain.

On July 21, 1982, Reichenbach was examined by Dr. Ardaiz at the request of the Social Security Administration. Dr. Ardaiz diagnosed him to have a history of Reiter's disease, cirrhosis of the liver, parotitis, chronic bronchitis, peripheral neuropathy affecting both legs, dermatophytosis, and onicomycosis. While Dr. Ardiaz stated that he did not see enough objective evidence of present active Reiter's syndrome at this point to qualify Reichenbach for disability, he opined that Reichenbach's chances for vocational rehabilitation were poor.

In November 1982 Reichenbach was evaluated by Dr. Ansel, a licensed psychologist, also at the request of the Secretary. Utilizing the WAIS/R scoring system, Dr. Ansel found Reichenbach to have a verbal I.Q. of 75, a performance I.Q. of 76, and a full scale I.Q. of 75, which is classified as borderline intelligence. Bender-Gestalt testing indicated some impairment in visual motor functioning, and Rorschach testing was interpreted as suggesting some deterioration in intellectual efficiency from formally higher levels due to a result of long term alcohol abuse. Dr. Ansel opined that although Reichenbach's mental impairments alone were not disabling, in combination with his physical problems there existed no vocational situation wherein Reichenbach could function adequately.

At the time of the hearing, Reichenbach was being treated by Dr. Robert E. Boyd, a specialist in rheumatology at the Johns Hopkins Arthritis Clinic. In a letter dated May 23, 1983, Dr. Boyd stated that Reichenbach has "a fairly straightforward history of Reiter's syndrome that has been characterized by arthritis and its manifestations as well as eye inflammation." He noted that the arthritic symptoms have been poorly controlled with medication. While he noted that x-rays were unremarkable, which is typical with patients having Reiter's disease, x-rays of Reichenbach's knees and ankles showed mild, degenerative arthritis. Dr. Boyd opined that Reichenbach's "present functional capability is one that would make it difficult for him to do any work which requires significant standing and walking" and that "his hand and wrist symptoms would make a desk job ... difficult as well." Moreover, Dr. Boyd stated that Reichenbach's Reiter's disease

is chronic and persistent and not likely to undergo dramatic improvement in the future.

The ALJ found that Reichenbach has a history of Reiter's disease, post-surgical status for ulnar nerve palsy, and a history of alcoholism with cirrhosis of the liver and slight intellectual deterioration, but that these impairments were not prohibitive of any basic work activities. Additionally, the ALJ noted without explanation that Reichenbach's "impairments have not resulted in a significant limitation of his residual functional capacity." Consequently, the ALJ concluded that Reichenbach did not have a severe impairment and was not entitled to disability benefits. The district court subsequently affirmed the ALJ's determination after the Appeals Council denied review. From this decision, Reichenbach appeals.

## II

On appeal, Reichenbach contends in part that the district court erred in affirming the Secretary's decision because the Secretary failed to consider the combined effect of his several physical impairments as well as the combined effect of his physical and mental impairments in determining whether these impairments were severe enough to prohibit basic work related activities as required under the Act. We agree.

A claimant for disability benefits bears the burden of proving a disability, 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a) (1985), which is defined by statute as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months, ..." 42 U.S.C. § 423(d)(1)(A).

To determine whether an individual is disabled, the Social Security Administration has promulgated regulations establishing a sequential evaluation process. 20 C.F.R. § 404.1520 (1985). If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under the process, the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents claimant from performing past relevant work. By satisfying step 3 or 4, the claimant establishes a prima facie case of disability which shifts the burden to the Secretary to show whether the claimant is able to perform other work considering his residual functional capacities and his age, education, and past work experience.

Even though the ALJ concluded that Reichenbach's impairments do not limit his residual functional capacity, he appears to have terminated his analysis at the second step of the sequence, finding that Reichenbach's impairments were not severe. Accordingly, he denied disability without further analysis.

The Secretary is authorized to deny claims if the claimant does not have an impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984). To determine whether an individual's impairments are of sufficient severity, 42 U.S.C. § 423(d)(2)(C) provides:

> [T]he Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, the combined impact of the impairments shall be

considered throughout the disability determination process.

P.L. 98–460, Social Security Disability Reform Act 1984 § 4(a)(1); to be codified at 42 U.S.C. § 423(d)(2)(C). The notes following the codification of this new section provide, however, that "this section shall apply with respect to determinations made on or after the first day of the first month beginning 30 days after the date of enactment of this [Social Security Disability Benefits Reform] Act", dated October 9, 1984. Therefore, this new section applies to determinations made on or after December 1, 1984. Since the Secretary's determination in this case became final on April 6, 1982, it appears that § 423(d)(2)(C) does not apply in this case.

Section 423(d)(2)(C) merely codified a policy this court has followed for several years. In previous cases we have held that in determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, the ALJ must consider the combined effect of all physical impairments, *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir.1974), as well as the combined effect of all physical and mental impairments. *DeLoatche v. Heckler*, 715 F.2d 148 (4th Cir.1983). In *DeLoatche*, the claimant had not only several physical ailments but several nonexertional limitations including visual and psychological problems. In considering the ALJ's determination which denied disability, we held that among other defects, the ALJ's most egregious error was his failure "to analyze the cumulative or synergistic effect DeLoatche's various maladies have on her ability to work." *Id.* at 150.

 Since Reichenbach has several physical impairments as well as a deteriorating borderline intelligence as noted by his I.Q. of 75, we conclude that the Secretary must consider these various impairments in combination in determining whether they are severe enough to prohibit basic work related activities. We believe that this conclusion comports with the Secretary's own policy as noted in Social Security Ruling 83–16 which requires that for individuals whose mental impairments do not meet the listing (I.Q. 60 to 69, 20 C.F.R. subpart P, Appendix L 12.05), but are more than not severe (I.Q. of 80 or above, not severe, Social Security Ruling 82–55), the ALJ must determine the residual functional capacity of the individual which requires a combined analysis of all physical and mental impairments as well as an assessment of vocational factors.

## III

While the ALJ may have considered all of these factors prior to determining that Reichenbach was not eligible for disability benefits, he failed to provide adequate explanation to show that he had considered the combined effect of the impairments so as to allow proper judicial review. Thus, we reverse the judgment of the district court and remand the case with instructions to return it to the Secretary for further proceedings in accordance with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.